E-FILED
Friday, 27 March, 2026 02:14:35 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| *In re Dot Foods Data Breach Litigation* | Case No. 3:26-cv-03019<br><br>**DEMAND FOR JURY TRIAL** |

# CONSOLIDATED CLASS ACTION COMPLAINT

Youssou Diop, Kenny Hunt, and Robert Dudenbostal ("Plaintiffs"), through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants Dot Foods Inc. and Dot Transportation, Inc. (collectively, "Dot" or "Defendant"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiffs allege the following based upon their personal knowledge and, as to all allegations not specific to Plaintiffs, on information and belief derived from investigation of counsel and matters of public record.

## INTRODUCTION

1. This is a civil action arising from Defendant's failure to safeguard certain Personally Identifying Information ("PII" or "Private Information") of 6,374 of its current and former employees, resulting in Defendant's network systems being unauthorizedly accessed between December 3-4, 2025.[1]

2. According to Defendant's Breach Notice, on December 3, 2025, Defendant "identified suspicious activity involving a small number of email accounts." A copy of the Breach Notice is attached as Exhibit A.

[1] Data Breach Notifications, Office of the Attorney General of Maine, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/892d86fd-c536-4205-beb9-001d40350ade.html (last visited March 19, 2026).

3. An internal investigation "determined that certain email messages within the impacted email accounts were viewed by an unauthorized actor between December 3, 2025, and December 4, 2025." Ex. A. And Defendant identified that an attachment to one of the accessed email messages contained employees' Private Information. Ex. A. Thus, cybercriminals had access to Defendant's systems for two days, during which time they were able to steal Private Information stored therein.

4. The unauthorized user also accessed Defendant's Dot Rewards platform, so victims were unable to access their Dot Rewards accounts while Defendant investigated. Ex. A.

5. Worse, Defendant admitted that it cannot rule out "whether attachments to the viewed emails were also viewed without authorization." Ex. A.

6. On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendant's failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

7. On or around December 15, 2025, Defendant began notifying Class Members about the Data Breach. *See* Ex. A.

8. Plaintiffs are current and former employees of Defendant and Data Breach victims. They bring this class action on behalf of themselves and all others harmed by Defendant's misconduct.

9. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this data breach, Defendant's current and former employees' Private

Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

## PARTIES

10. Plaintiff Youssou Diop is a natural person and citizen of Beardstown, Illinois, where he intends to remain.

11. Plaintiff Kenny Hunt is a natural person and citizen of Miamisburg, Ohio, where he intends to remain.

12. Plaintiff Robert Dudenbostal is a natural person and citizen of Mount Sterling, Illinois, where he intends to remain.

13. Defendant Dot Foods, Inc. is an Illinois corporation with its principal place of business located at 1 Dot Way, P.O. Box 192, Mt. Sterling, IL 62353.

14. Defendant Dot Transportation, Inc. is a Delaware corporation with its principal place of business located at 1 Dot Way, P.O. Box 192, Mt. Sterling, IL 62353.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are over 100 putative Class Members. At least one member of the Class is a citizen of a state different from Defendants.

16. This Court has general personal jurisdiction over Defendant Dot Foods, Inc. because Defendant is incorporated in the state of Illinois and maintains its headquarters and principal place of business in this District.

17. This Court has general personal jurisdiction over Defendant Dot Transportation, Inc. because Defendant maintains its headquarters and principal place of business in this District.

18. Venue is proper in this Court because Defendants' principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

***Dot Foods, Inc. and Dot Transportation, Inc.***

19. Dot Foods is North America's largest food industry redistributor and on of the largest private, family-owned businesses in the U.S.[2]

20. Dot Transportation is the exclusive transportation affiliate of Dot Foods and carries out distributions for Dot Foods with over 1,800 privately owned trucks.[3]

21. On information and belief, Dot failed to undertake adequate measures to safeguard the Private Information of Plaintiffs and the proposed Class Members, including failing to implement industry standards for data security, and failing to properly train employees on cybersecurity protocols, resulting in the Data Breach.

22. In collecting and maintaining the Private Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Private Information.

23. Under state and federal law, businesses like Defendant have duties to protect their current and former employees' Private Information and to notify them about breaches.

24. Defendant recognizes these duties, declaring in its "Privacy Policy" that "[w]e recognize the importance of your privacy and personal information and the need to protect

---

[2] Dot Foods, LinkedIn, https://www.linkedin.com/company/dotfoods/ (last visited March 19, 2026).

[3] Dot Transportation, About Us, https://www.dottransportation.com/about/ (last visited March 19, 2026).

the information that you provide to us" and "[w]e take your privacy seriously."[4] Defendant also promises that the "[s]ecurity of your information is very important to us, and we have put in place safeguards to preserve the integrity and security of information we collect and that we share with our service providers."[5]

25. As a direct and proximate result of Defendant's failures to protect Plaintiffs' and the Class Members' sensitive personal information and warn them promptly and fully about the Data Breach, Plaintiffs and the proposed Class have suffered widespread injury and damages necessitating Plaintiffs seeking relief on a class wide basis.

***Plaintiffs and the Class Members entrusted their Private Information to Dot***

26. Plaintiffs and the Class are current and former Dot employees.

27. As a condition of employment with Dot, Plaintiffs and the Class Members were required by Dot to provide their sensitive and confidential Private Information.

28. Dot maintains records of its employees' Private Information in the ordinary course of business. These records are stored on Dot's network.

29. Dot acquired, collected, and stored a massive amount of said Private Information of its employees, including but not limited to Plaintiffs' and Class Members' names and Social Security numbers. Ex. A.

30. By obtaining, collecting, using, and deriving a benefit from its employees' Private Information, Dot assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting their Private Information from unauthorized disclosure.

---

[4] Privacy Policy, Dot, https://www.insightpartners.com/privacy-policy/ (last visited March 19,2026).
[5] *Id.*

31. Plaintiffs have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiffs, as current or former employees of Defendant, relied on Dot to keep their Private Information confidential and securely maintained, to use this information for authorized purposes and disclosures only.

32. Plaintiffs and the proposed Class Members entrusted their Private Information to Dot solely for the purposes of applying for employment with Defendant and/or as a condition of employment, with the expectation and implied mutual understanding that Dot would strictly maintain the confidentiality of the information and undertake adequate measures to safeguard it from theft or misuse.

33. Plaintiffs and the proposed Class Members would not have entrusted Dot with their highly sensitive Private Information if they had known that Dot would fail to take adequate measures to protect it from unauthorized use or disclosure.

***Plaintiffs' and the Class Members' Private Information was Improperly Disclosed and Compromised in the Data Breach***

34. As a prerequisite to employment, Plaintiffs and Class Members disclosed their non-public and sensitive Private Information to Dot, with the implicit understanding that their Private Information would be kept confidential. This understanding was based on all the facts and circumstances attendant to their employment there, and the express, specific, written representations made by Dot and its agents.

35. Plaintiffs and the Class Members reasonably relied upon Dot's representations to their detriment and would not have provided their sensitive Private Information to Dot if not for Dot's explicit and implicit promises to adequately safeguard that information.

36. According to its Breach Notice, on "December 3, 2025, [Dot] identified suspicious activity involving a small number of email accounts." Ex. A.

37. Defendant's investigation "determined that certain email messages within the impacted email accounts were viewed by an unauthorized actor between December 3, 2025, and December 4, 2025" and "an attachment to one of the accessed email messages contained" Private Information. Ex. A.

38. Additionally, the unauthorized user also accessed the Dot Rewards platform, causing Defendant to lock down access to it while it investigated. Ex A.

39. Defendant's Breach Notice elaborated on the specific types of employees' Private Information that was exposed, which included: names and Social Security numbers. Ex. A.

40. Defendant represented in its Breach Notice that it has "enhanced technical safeguards." Ex. A. However, this is too little too late because these steps should have been taken *before* the Data Breach.

41. Dot's Breach Notice acknowledged the increased risk faced by victims, encouraging them "to remain vigilant against incidents of identity theft by reviewing account statements and credit reports for unusual activity and to detect errors, and to report any suspicious activity to your financial institutions." Ex. A.

42. Although Dot offered several months of complimentary credit monitoring, this is insufficient to address the lifelong risk that victims now face due to the Data Breach.

43. As a result of this Data Breach, the Private Information of Plaintiffs and the proposed Class Members was disclosed without their authorization and irreversibly compromised.

44. The Data Breach was preventable and a direct result of Dot's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect employees' Private Information.

45. And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[6]

46. Thus, on information and belief, Plaintiffs' and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff Youssou Diop's Experiences and Injuries***

47. Plaintiff Youssou Diop is an employee of Defendant and a Data Breach victim.

48. As a condition of employment, Defendant required Plaintiff Diop to provide it with his Private Information. Defendant thus obtained and maintained Plaintiff's Private Information.

49. Plaintiff Diop provided his Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to Dot's internal policies as well as state and federal law.

50. As a result, Plaintiff Diop was injured by Defendant's Data Breach.

51. Plaintiff Diop is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an unsafe manner. Plaintiff Diop is careful to store any documents containing his Private Information in a secure location.

52. Upon information and belief, through its Data Breach, Defendant compromised Plaintiff Diop's Private Information including his name and Social Security number.

---

[6] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

53. On information and belief, Plaintiff Diop's Private Information was obtained by cybercriminals and has been, or will be, published on the Dark Web.

54. Once an individual's Private Information is for sale and access on the Dark Web, as Plaintiff Diop's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[7]

55. As a result of the Data Breach, Plaintiff Diop has spent time and made reasonable efforts to mitigate the impact, including but not limited to researching the Data Breach, reviewing credit card and financial account statements and monitoring his credit information. After all, Defendant directed Plaintiff to take those steps in its breach notice.

56. Plaintiff will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what Private Information was exposed. Plaintiff has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

57. And in the aftermath of the Data Breach, Plaintiff Diop has suffered from a spike in spam and scam emails, text messages, and emails.

58. Plaintiff Diop suffered actual injury from the exposure and theft of his Private Information—which violates his rights to privacy.

---

[7] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited March 19, 2026).

59. Plaintiff Diop suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

60. Plaintiff Diop suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

61. Because of the Data Breach, Plaintiff Diop anticipates spending considerable amounts of time and money to try and mitigate his injuries.

62. Today, Plaintiff Diop has a continuing interest in ensuring that his Private Information—which, upon information and belief, remains backed up in Defendant's possession— is protected and safeguarded from additional breaches.

***Plaintiff Kenny Hunt's Experiences and Injuries***

63. Plaintiff Kenny Hunt is a current employee of Defendant, having worked for Defendant for the last ten years.

64. As a condition of employment, Defendant required Plaintiff Hunt to provide it with his Private Information. Defendant thus obtained and maintained Plaintiff's Private Information.

65. Plaintiff Hunt provided his Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to Dot's internal policies as well as state and federal law.

66. As a result, Plaintiff Hunt was injured by Defendant's Data Breach.

67. Plaintiff Hunt is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an

unsafe manner. Plaintiff Hunt is careful to store any documents containing his Private Information in a secure location.

68. To the best of his knowledge, Plaintiff Hunt is not aware that his Private Information has involved in any other data breaches other than the one at issue here.

69. Upon information and belief, through its Data Breach, Defendant compromised Plaintiff's Private Information including his name, Social Security number, and date of birth.

70. On information and belief, Plaintiff Hunt's Private Information was obtained by cybercriminals and has been, or will be, published on the Dark Web.

71. Once an individual's Private Information is for sale and access on the Dark Web, as Plaintiff Hunt's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[8]

72. Plaintiff Hunt has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, Defendant directed Plaintiff to take those steps in its breach notice.

73. Plaintiff Hunt fears for his personal financial security and worries about what information was exposed in the Data Breach.

74. Because of Defendant's Data Breach, Plaintiff Hunt has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

[8] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited March 19, 2026).

75. Plaintiff Hunt suffered actual injury from the exposure and theft of his Private Information— which violates his rights to privacy.

76. Plaintiff Hunt suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

77. Plaintiff Hunt suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

78. Because of the Data Breach, Plaintiff Hunt anticipates spending considerable amounts of time and money to try and mitigate his injuries.

79. Today, Plaintiff Hunt has a continuing interest in ensuring that his Private Information—which, upon information and belief, remains backed up in Defendant's possession— is protected and safeguarded from additional breaches.

***Plaintiff Robert Dudenbostal's Experiences and Injuries***

80. Plaintiff Robert Dudenbostal is an employee of Defendant.

81. As a condition of employment, Defendant required Plaintiff Dudenbostal to provide it with his Private Information. Defendant thus obtained and maintained Plaintiff's Private Information.

82. Plaintiff Dudenbostal provided his Private Information to Defendant and trusted that the company would use reasonable measures to protect it according to Dot's internal policies as well as state and federal law.

83. As a result, Plaintiff Dudenbostal was injured by Defendant's Data Breach.

84. Plaintiff Dudenbostal is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an unsafe manner. Plaintiff Dudenbostal is careful to store any documents containing his Private Information in a secure location.

85. Upon information and belief, through its Data Breach, Defendant compromised Plaintiff Dudenbostal's Private Information including his name and Social Security number.

86. On information and belief, Plaintiff Dudentbostal's Private Information was obtained by cybercriminals and has been, or will be, published on the Dark Web.

87. Once an individual's Private Information is for sale and access on the Dark Web, as Plaintiff Dudenbostal's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[9]

88. Plaintiff Dudenbostal has spent—and will continue to spend—significant time and effort researching the Data Breach, reviewing financial statements, and monitoring his credit information. After all, Defendant directed Plaintiff to take those steps in its breach notice.

89. Plaintiff Dudenbostal fears for his personal financial security and worries about what information was exposed in the Data Breach.

90. Because of Defendant's Data Breach, Plaintiff Dudenbostal has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

---

[9] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited March 19, 2026).

91. Plaintiff Dudenbostal suffered actual injury from the exposure and theft of his Private Information— which violates his rights to privacy.

92. Plaintiff Dudenbostal suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

93. Plaintiff Dudenbostal suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

94. Because of the Data Breach, Plaintiff Dudenbostal anticipates spending considerable amounts of time and money to try and mitigate his injuries.

95. Today, Plaintiff Dudenbostal has a continuing interest in ensuring that his Private Information—which, upon information and belief, remains backed up in Defendant's possession— is protected and safeguarded from additional breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

96. Because of Defendant's failure to prevent the Data Breach, Plaintiffs and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of the opportunity to control how their Private Information is used;

b. diminution in value of their Private Information;

c. compromise and continuing publication of their Private Information;

d. out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen Private Information; and

h. continued risk to their Private Information—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

97. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

98. The value of Plaintiffs and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"— further exposing the information.

99. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

100. One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross- referencing and combining two sources of data—first the stolen Private Information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

101. The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiffs and the Class that is available on the internet.

102. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber- criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

103. Defendant disclosed the Private Information of Plaintiffs and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiffs and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

104. Defendant's failure to promptly and properly notify Plaintiffs and Class Members of the Data Breach exacerbated Plaintiffs and Class Members' injuries by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Consumers Prioritize Data Security***

105. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[10] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[11]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[12]

c. 89% of consumers stated that "I care about data privacy."[13]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[14]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[15]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[16]

---

[10] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2026).
[11] *Id*. at 3.
[12] *Id*.
[13] *Id*. at 9.
[14] *Id*.
[15] *Id*.
[16] *Id*. at 11.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

106. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

107. According to the *2023 Annual Data Breach Report*, the number of data compromises in 2023 nearly doubled compared to 2022.[17] And in 2023, a record 3,205 breaches occurred, exposing the data of approximately 353,027,892 victims.[18]

108. And, in 2024, there were 3,158 data breaches with over 1.3 billion victim notices, a 211% increase year over year.[19]

109. Cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack.[20]

110. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

111. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

---

[17] https://www.idtheftcenter.org/post/2023-annual-data-breach-report-reveals-record-number-of-compromises-72-percent-increase-over-previous-high/ (last visited March 19, 2026).

[18] *Id.*

[19] *2024 Data Breach Report* at 6, Identity Theft Resource Center (Jan. 2025), https://www.idtheftcenter.org/wpcontent/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited March 19, 2026).

[20] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

112. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[21] The FTC declared that, *inter alia*, businesses must:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

113. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

114. Furthermore, the FTC explains that companies must:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

[21] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

115. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure— to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

116. In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

117. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; and limiting which employees can access sensitive data.

118. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

119. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02,

PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

120. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

121. Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the Dot Foods Data Breach discovered in December 2025, including all those individuals who received notice of the breach.

122. Excluded from the Class are Defendant Dot Foods and its subsidiaries, affiliates, officers, directors, and members of their immediate families, and any entity in which it has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

123. Plaintiffs reserve the right to amend the class definition.

124. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

125. <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

126. Numerosity. The Class Members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 6,374 members.

127. Typicality. Plaintiffs' claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

128. Adequacy. Plaintiffs will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class Members' interests. And Plaintiffs' retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

129. Commonality and Predominance. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Private Information;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant were negligent in maintaining, protecting, and securing Private Information;

d. if Defendant breached contract promises to safeguard Plaintiffs and the Class's Private Information;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiffs and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiffs and the Class are entitled to damages, treble damages, and or injunctive relief.

130. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

131. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

132. Plaintiffs and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information,

use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

133. Defendant owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

134. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if their Private Information was wrongfully disclosed.

135. Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs and Class Members' Private Information.

136. Defendant owed—to Plaintiffs and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

137. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

138. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

139. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

140. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining employment from Defendant.

141. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant held vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information—whether by malware or otherwise.

142. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

143. Defendant improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

144. Defendant breached these duties as evidenced by the Data Breach.

145. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs and Class Members' injury.

146. Defendant has admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

147. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including fraud, monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

148. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
**Negligence *per se***
**(On Behalf of Plaintiffs and the Class)**

149. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

150. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Private Information.

151. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's Private Information.

152. Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

153. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

154. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected

and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

155. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

156. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including fraud, monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

157. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

158. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

159. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## THIRD CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

160. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

161. Plaintiffs and Class Members were required to provide their Private Information to Defendant as a condition of receiving employment from Defendant. Plaintiffs and Class Members provided their Private Information to Defendant in exchange for Defendant's employment.

162. Plaintiffs and Class Members reasonably understood that a portion of the funds generated by their employment would be used to pay for adequate cybersecurity measures.

163. Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

164. Plaintiffs and the Class Members accepted Defendant's offers by disclosing their Private Information to Defendant in exchange for employment.

165. In turn, and through internal policies, Defendant agreed to protect and not disclose the Private Information to unauthorized persons.

166. In its Privacy Policy, Defendant represented that it would protect Plaintiffs' and Class Member's Private Information.

167. Implicit in the parties' agreement was that Defendant would take reasonable measures to protect Plaintiffs and Class Members Private Information.

168. After all, Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

169. Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

170. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

171. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

172. Defendant materially breached the contracts it entered with Plaintiffs and Class Members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Private Information that Defendant created, received, maintained, and transmitted.

173. In these and other ways, Defendant violated its duty of good faith and fair dealing.

174. Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

175. Plaintiffs and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

176. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

177. This claim is pleaded in the alternative to the breach of implied contract claim.

178. Plaintiffs and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) the revenues generated from Plaintiffs' and the Class's employment and (2) using their Private Information to provide employment and facilitate its business operations.

179. Defendant appreciated or had knowledge of the benefits it received from Plaintiffs and Class Members. And Defendant benefited from the revenue generated by Plaintiffs and the Class's employment and from receiving Plaintiffs' and Class Members' Private Information, as this was used to provide employment and facilitate its business operations.

180. Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

181. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information.

182. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of

Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

183. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and Class Members' employment because Defendant failed to adequately protect their Private Information.

184. Plaintiffs and Class Members have no adequate remedy at law.

185. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

**FIFTH CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ICLS 505/1, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

186. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

187. This claim is brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

188. Plaintiffs and Class Members are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).

189. Plaintiffs, the Class, and Defendant are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

190. The ICFA applies to Defendant because Defendant engaged in "trade" or "commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f). Defendant engages in the sale of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

191. Defendant violated ICFA by, *inter alia*:

a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*., which was a direct and proximate cause of the Data Breach;

d. omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class Members' Private Information; and

e. omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

192. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their Private Information.

193. Defendant intended to mislead Plaintiffs and Class Members and induce them to rely on its omissions.

194. Had Defendant disclosed to Plaintiffs and Class Members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the Private Information that Plaintiffs and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and Class Members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

195. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiffs' and Class Members' rights.

196. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

197. And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

198. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law.

199. Defendant's wrongful practices were and are injurious to the public because those practices were part of Defendant's generalized course of conduct that applied to the Class. Plaintiffs and the Class have been adversely affected by Defendant's conduct and the public was and is at risk as a result thereof.

200. Defendant also violated 815 ILCS 505/2 by failing to immediately notify Plaintiffs and the Class of the nature and extent of the Data Breach pursuant to the Illinois Private Information Protection Act, 815 ILCS 530/1, *et seq*.

201. Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiffs and the Class seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendant's violations of the ICFA.

**SIXTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiffs and the Class)**

202. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

203. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

204. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiffs allege that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiffs and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

205. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendant's breach of its duties caused—and continues to cause—injuries to Plaintiffs and Class Members.

206. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

207. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

208. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs' and Class Members' injuries.

209. If an injunction is not issued, the resulting hardship to Plaintiffs and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

210. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class Members, and the public at large.

## PRAYER FOR RELIEF

Plaintiffs and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiffs and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiffs and the Class;

D. Enjoining Defendant from further unfair and/or deceptive practices;

E. Awarding Plaintiffs and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims so triable.

Dated: March 27, 2026

By: /s/ Raina C. Borrelli

Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Gary M. Klinger
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on March 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 27th day of March, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*

Raina C. Borrelli
raina@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109